# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

ERIN FIELD,

    *Plaintiff*                                    Civil Action No.

v.

EAGLE NEST OUTFITTERS, INC.,

    *Defendant*

## COMPLAINT AT LAW

## INTRODUCTION

1. This action arises out of the Defendant's failure to warn users of serious risks of which it knew or should have known, and its choice to engage in an aggressive marketing campaign which promoted and encouraged the unsafe, and unwarned-against, use of its products.

2. Defendant Eagle Nest Outfitters, Inc. ("ENO") manufactures and sells hammocks and hanging straps. Although it knew or should have known of the risks of hanging its hammocks on certain items, such as brick columns, it did not sufficiently communicate those risks to its users.

3. Not only did ENO fail to communicate the serious risk of dangers caused by hanging its hammocks on certain unsafe structures, including masonry structures, but it simultaneously waged a deceptive and dangerous marketing campaign encouraging users to affix hammocks in just such places. ENO's campaign – engaged in for the specific purpose of selling more hammocks – encouraged users to hang hammocks in an unsafe manner and to post them to a photo caption contest in order to win prizes. Through the campaign, ENO disguised and misrepresented the suitable purposes and safety of its hammocks.

4. As a result of ENO's failures and its negligent and deceptive marketing, Plaintiff Erin Field was crushed under the weight of a collapsed brick column, which could not support the weight of a hammock manufactured and sold by Defendant. She suffers from significant, lifelong injuries as a result of Defendant's conduct. She is a quadriplegic.

5. In this lawsuit, Plaintiff Erin Field sues Defendant ENO for breach of warranty, point-of-sale failure to warn, post-sale failure to warn, negligent marketing and promotion, and violation of Massachusetts General Laws Chapter 93A.

## PARTIES

6. Plaintiff, Erin Field, is a resident and citizen of Somerville, Suffolk County, Massachusetts.

7. Defendant, Eagle Nest Outfitters, Inc. ("ENO"), is a corporation organized under the laws of North Carolina with its principal place of business in Asheville, North Carolina.

## JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to 28 U.S. Code § 1332 because complete diversity exists between Plaintiff and Defendant, and the matter in controversy exceeds $75,000.00.

9. Plaintiff is a citizen of Massachusetts.

10. Defendant is a North Carolina corporation with its principal place of business in Asheville, North Carolina.

11. Venue is appropriate under 28 U.S. Code § 1391 because Plaintiff is a resident of this district, and because Defendant marketed and sold hammocks in this district.

## FACTS

12. On and prior to July 11, 2017, ENO manufactured hammocks which it marketed and sold to individuals across the United States and abroad.

13. On August 4, 2015, Plaintiff's brother, Todd Field ("Todd"), purchased a new "DoubleNest Hammock" and "Atlas Hanging Straps" from NetRush through Amazon.com. Both products were manufactured by ENO.

14. Defendant ENO provided inadequate warnings or no warnings accompanying the DoubleNest Hammock and Atlas Hanging Straps regarding foreseeable dangerous uses.

15. As of July 11, 2017, Todd was living in an apartment located at 43 Charter Street in Boston, Suffolk County, Massachusetts.

16. At the time of Todd's purchase, ENO was or should have been aware of multiple prior significant injuries and deaths caused when similar hammocks were hung from unstable trees or other structures, including the following:

- On May 27, 2011, K.M., a 14 year-old Utah girl, was in a hammock attached to two brick columns when of the columns collapsed on top of her. She became quadriplegic. This story was well-publicized, including by an "Inside Edition" report on hammock safety that aired on July 11, 2016 (picture below from that report).



- On September 18, 2010, Mallori Kastner, an 18 year-old Indiana woman, died when the tree her hammock was attached to fell on top of her. Her boyfriend, 21 year-old Jeremy Mohr, was also in the hammock and suffered paralysis injury. This was publicized on the internet and local news media outlets.
- On October 27, 2009, T.B., a 3 year-old boy in Australia was in a hammock attached to a pillar made of clay masonry bricks and mortar. The pillar collapsed on the boy, killing him. This incident, and the investigation that followed was publicized in Australia. ENO has established a presence in Australia, through the development of its Australian website, www.enonation.com.au.
- On March 15, 2009, J.P., a 14 year-old girl in Harvard, Massachusetts, died when the tree to which her hammock was attached fell on her. This was publicized on the internet and local news media outlets.

17. Moreover, even after Todd's purchase, ENO did or should have become aware of several more catastrophic injuries and deaths caused when similar hammocks were hung from unstable trees or structures, including the following:

- On May 14, 2016, P.S., a 13 year-old Iowa girl, died when the brick column her hammock was attached to fell on top of her.  P.S. was in an ENO DoubleNest Hammock that was attached to the brick column with ENO's Atlas Straps.



The story of P.S.'s tragedy was well publicized by news media sources such as CNN, USA Today, and The Washington Post.

- On April 24, 2016, A.D., a 13 year-old Connecticut girl, died when a tree her hammock was attached to fell on her. This was publicized on the internet and local news media outlets.

- On May 26, 2016, Elizabeth Gay Casey, an Arkansas woman, was killed when a tree her hammock was attached to fell on her. This was publicized on the internet and local news media outlets.

- On May 16, 2016, in Amherst, Massachusetts, a man was injured when his hammock was attached to a rooftop chimney, and the chimney collapsed on top of him. This was publicized on the internet and local news media outlets.

- On May 21, 2017, J.D., a 15 year-old Georgia girl, was killed when a tree her hammock was attached to fell on her. This was publicized on the internet and local news media outlets.

18.     Despite its actual or constructive knowledge of the foregoing catastrophes and dangers, ENO waged a digital media marketing campaign, through its website and social media platforms, intended to promote sales of ENO hammocks and straps.

19.     ENO's marketing campaign included a photo caption contest which encouraged individuals to share pictures of hammocks hanging in unusual places, including rooftops or other areas where there were no trees. This photo contest was prominently displayed on the ENO website, and photo contest winners were rewarded with prizes monthly.

20.     ENO also actively promoted its hammocks through photos posted on its social media accounts, including but not limited to ENO's Instagram and Twitter accounts.

21.     Prior to July 11, 2017, ENO published several photos on its website and social media platforms which showed individuals using ENO hammocks in dangerous ways.

22.     Examples of these photos include the following images, published by ENO in November, 2016, and May, 2017, respectively:





23. Although ENO's photo caption contest warned against hanging hammocks too high off the ground or stacking them, and forbid entry of photographs of such placements, it did not warn against or prohibit hanging them from masonry structures, non weight-bearing walls, or non-trees.

24. Although ENO's photo caption contest directed users to review ENO's safety instructions, posted elsewhere on its website, the photos it published through the contest and on its social media accounts were inconsistent with those instructions.

25. ENO provided no instructions adequate to communicate the risk and danger of hanging its hammocks on structures other than healthy trees, such as brick columns and other masonry structures.

26. On or about June 1, 2017, Todd moved into the apartment at 43 Charter Street in Boston. After moving to the apartment, Todd continued to review ENO's social marketing campaign and/or photo caption contest.

27. As a result of influence from ENO's above described marketing campaign, Todd decided to hang his ENO hammock on the rooftop of the apartment building located at 45 Charter Street, which was accessible from his 43 Charter Street apartment rooftop. He attached the hammock with the Atlas Hanging Straps to brick columns located on the rooftop.

28. Based on influence from ENO's above described marketing campaign, Todd took a picture within a month of moving into his apartment showing his hammock affixed to the brick columns. Todd attached a caption to the photo stating, "no trees no problem."

29. But for the images in ENO's marketing campaign, Todd would not have hung his hammock on the rooftop of 45 Charter Street.

30. On July 10, 2017, Plaintiff was visiting Todd with her boyfriend, John Benzinger ("Jack").

31. Just prior to midnight on July 10, 2017, Plaintiff, Jack, and Todd went to the rooftop of the building neighboring Todd's apartment building, on 45 Charter Street.

32. Shortly thereafter, Todd again affixed his ENO hammock using Atlas Hanging Straps to the same brick columns, again based on the influence of ENO's marketing campaign.

33. Shortly after Erin sat on one side of the hammock, Jack sat down in the hammock next to her.

34. Upon Jack sitting on the hammock, the brick column to which one side was attached collapsed on Erin, causing catastrophic, lifelong injuries.

35. Since Plaintiff's injury, ENO has done nothing to correct the dangerous misperception shared by many people that hanging hammocks to brick masonry columns is safe. As a result, on June 15, 2020 -- just days before the filing of this Complaint -- sisters C.S. (age 12) and S.S. (age 14) of Cleveland Heights, Ohio, were killed when a brick pillar to which they had attached their hammock collapsed. Like Plaintiff's injury, the needless deaths of the sisters demonstrate not only the danger of attaching hammocks to masonry structures, but also the widespread misconception shared by hammock users that hanging them to brick structures is safe.

## COUNT I
## BREACH OF WARRANTY

36. Plaintiff repeats and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

37. ENO was a manufacturer of hammocks and hanging straps which it produced for sale to consumers. ENO was in the business of manufacturing hammocks and other products for placement into trade or commerce.

38. As a manufacturer of ENO hammocks and hanging straps, ENO had a duty to provide adequate warnings of risks of which it knew or should have known.

39. Todd's ENO DoubleNest Hammock and Atlas Hanging Straps were defective when purchased and not suitable for the purpose for which they were merchandised because they did not provide adequate warnings that ENO hammocks are unsafe when attached to structures

7

not suitable to withstand horizontal forces imposed by the ENO DoubleNest Hammock and Atlas Hanging Straps.

40. As the manufacturer of the DoubleNest Hammock and Atlas Hanging Straps, ENO had a continuing duty to warn Todd and other foreseeable users of dangers it reasonably knew or should have discovered after Todd's purchase, including the danger of affixing Atlas Hanging Straps to non-tree structures that are not suitable to bear the prescribed weight.

41. ENO's failures to warn of dangers learned before and after the sale of Todd's DoubleNest Hammock and Atlas Hanging Straps were a breach of the implied warranty of merchantability and its continuing duty to warn.

42. Moreover, by waging an internet and social media marketing campaign that showed its hammocks being affixed in unsafe ways, ENO's conduct affirmatively represented that its hammocks and straps were fit to be hung on structures that were not suitable to bear the prescribed weight, including non-weight bearing masonry.

43. Had ENO provided adequate warnings on its DoubleNest Hammock and Atlas Hanging Strap, and had ENO not affirmatively influenced Todd through its marketing campaign by creating the false impression that its hammocks could be hung in a variety of methods that did not require being affixed to two stable trees, Todd would not have affixed his hammock the brick columns on 45 Charter Street, and Plaintiff's injuries would have been avoided.

44. As a direct and proximate result of the foregoing breaches of warranty, Plaintiff suffered catastrophic injuries.

**COUNT II**
**FAILURE TO WARN**
**DEFECTIVE POINT-OF-SALE WARNINGS**

45. Plaintiff repeats and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

46. As a manufacturer of ENO hammocks and hanging straps, ENO had a duty to provide adequate warnings to Plaintiff and other users of risks of which it knew or should have known.

47. Todd's ENO DoubleNest Hammock and Atlas Hanging Straps were defective and not suitable for the purpose for which they were merchandised because they failed to provide adequate point-of-sale warnings that ENO hammocks are unsafe when attached to fixed points that are not suitable to withstand horizontal forces imposed by the ENO DoubleNest Hammock and Atlas Hanging Straps.

48. ENO was aware, or should have been aware, of the risks associated with the DoubleNest Hammock being affixed with Atlas Hanging Straps to points not suitable for such forces.

49. ENO breached said duty by failing to communicate adequate warnings to users of the DoubleNest Hammock and Atlas Hanging Straps of associated risks.

50. As a direct and proximate result of ENO's failure to warn, Plaintiff suffered catastrophic injuries.

## COUNT III
## FAILURE TO WARN
## DEFECTIVE POST-SALE WARNINGS

51. Plaintiff repeats and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

52. Following Todd's purchase of ENO DoubleNest Hammock and Atlas Hanging Straps, ENO had a continuing duty to warn Todd of dangers it reasonably knew or should have discovered, including the danger of affixing Atlas Hanging Straps to certain items other than stable trees, such as non-weight bearing brick structures.

53. By failing to warn of dangers learned post-sale, ENO violated its continuing duty to warn.

54. Moreover, in addition to failing to adequately warn users, by waging an internet and social media marketing campaign displaying its hammocks being affixed in unsafe ways, ENO's affirmative conduct represented that its hammocks and straps were fit to be hung on certain items other than stable trees, including non-weight bearing masonry. This influenced and encouraged users to affix hammocks in dangerous and unsafe manners.

55. ENO breached said duty by failing to warn users of the DoubleNest Hammock and Atlas Hanging Straps of associated risks.

56. As a direct and proximate result of ENO's failure to warn, Plaintiff suffered catastrophic injuries.

## COUNT IV
## NEGLIGENT MARKETING

57. Plaintiff repeats and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

58. As a manufacturer of ENO hammocks and hanging straps, ENO owed a duty to Plaintiff and to all persons whom its products might foreseeably harm to exercise due care in the manufacturing, marketing and sale of its ENO hammocks and hanging straps.

59. ENO knew or should have known that affixing ENO's DoubleNest Hammock using its Atlas Hanging Strap to fixed points that were not stable trees presented an unreasonably dangerous condition that could result in serious injury to users.

60. ENO breached its duty of care to Plaintiff by marketing and promoting ENO hammocks and straps in a manner that encouraged users to attach hammocks with straps to fixed points other than stable trees.

61. As a direct and proximate result of ENO's negligence, Plaintiff suffered catastrophic injuries.

## COUNT V
## VIOLATION OF M.G.L. c. 93A, § 2

62. Plaintiff repeats and reaffirms every allegation set forth in all preceding paragraphs as if fully restated herein.

63. Defendant ENO's conduct, including its breaches of warranty, failures to warn, and negligent and deceptive marketing and promotion of ENO Hammocks which encouraged individuals to use ENO hammocks in a dangerous and unsafe manner, constitutes unfair and deceptive trade practices under M.G.L. c. 93A, §2.

64. In light of ENO's knowledge and understanding of the dangers associated with attaching hammocks with hanging straps to structures other than stable trees, Defendant's actions and omissions were wanton and willful.

65. As a direct and proximate result of Defendant's actions and omissions, Plaintiff has suffered physical injuries and emotional distress.

66. Plaintiff has made a written demand for relief pursuant to M.G.L. c. 93A, § 9(3) and the Defendant has failed to make a timely and adequate response, thereby entitling the Plaintiff to judgment on this Court and for all damages authorized by statute.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff claims:

1. Damages in amount to be determined at trial;
2. Costs, attorney's fees and trouble damages pursuant to M.G.L. c. 93A, § 9; and
3. Such other legal or equitable relief as the Court may award.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury of all appropriate issues and matters.

DATED at Portland, Maine this 23rd day of June, 2020.

        Attorney for Plaintiff,

        */s/ Terrence D. Garmey*

        _____
        Terrence D. Garmey, Esq. (Bar #185840)
        TERRY GARMEY & ASSOCIATES
        482 Congress Street, Suite 402
        Portland, ME 04101
        tgarmey@garmeylaw.com
        207-899-4644